# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **14th day of October, 2015**, are as follows:

**BY CRICHTON, J.**:

2014-KP-1214
C/W
2014-KP-1238

STATE OF LOUISIANA v. JESSIE M. GRIFFIN, II (Parish of Union)
(Payment of Cost of Investigation and Prosecution)

For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court is reinstated. REVERSED.

# SUPREME COURT OF LOUISIANA

## NO. 2014-KP-1214

## CONSOLIDATED WITH

## NO. 2014-KP-1238

## STATE OF LOUISIANA

## VERSUS

## JESSIE M. GRIFFIN, II

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, PARISH OF UNION

**CRICHTON, J.**

We granted the writ application in this case to determine whether La. C.Cr.P. art. 887(A) and La. C.Cr.P. art. 895.1(B) permit the district attorney and sheriff to impose costs of prosecution and costs of investigation on convicted criminal defendants where those costs are not extraordinary or special costs unique to a particular case. For the reasons that follow, we find that these articles do permit the recovery of such costs, and further find that the costs imposed by the district court were fair, reasonable, and not excessive.

## BACKGROUND

On October 8, 2004, the State of Louisiana, through the office of the district attorney of the Third Judicial District Court, filed an Omnibus Motion for Costs of Prosecution, which lists in detail the tasks which the district attorney's office performs in every misdemeanor case received by his office. In the motion, the State avers that the minimum costs incurred by the district attorney of the 3rd JDC in connection with the successful prosecution of each misdemeanor defendant exceeds $100.00, and requested that each misdemeanor defendant be ordered to pay at least $100.00. The motion was filed with the Clerk of Court, and is

1

available for review, inspection, and copying by anyone who requests it. Likewise, in 2006, the judges of the 3rd JDC, by *en banc* order signed by the Clerk of Court, authorized the imposition of costs of investigation of $100.00 for each misdemeanor conviction, noting that $100 is "fair and reasonable" and "in line with cost[s] incurred in any misdemeanor case sentenced."[1]

On July 12, 2011, while driving in Union Parish, the defendant in this case, Jesse M. Griffin, II, was stopped by Union Parish Sherriff's Office deputies and arrested. The district attorney later charged Griffin by bill of information with driving while intoxicated, first offense, as defined by La. R.S. 14:98. Griffin pleaded guilty on September 12, 2012, and was sentenced to serve 150 days in the parish jail and to "pay a fine of $600 and all costs of these proceedings." The jail sentence was suspended, and defendant was placed on supervised probation for one year subject to certain conditions. These conditions included the payment of a $600 fine, costs of court, $100 costs of prosecution, and $100 costs of investigation. Although he objected to the costs of prosecution and costs of investigation, the defendant signed the written sentence, certifying that he had read, understood, and agreed to abide by the conditions of probation. The defendant paid both $100 fees assessed as costs of prosecution and costs of investigation, as well as fines and court costs.

On October 15, 2012, the defendant filed a motion in the trial court to reconsider the sentence and the conditions of probation, specifically objecting to the imposition of costs of prosecution and costs of investigation. The defendant argued that La. C.Cr.P. arts. 887(A) and 895.1(B) only permit recoupment of expenses not associated with the "ordinary operation" of the district attorney's and sheriff's offices. Rather, the defendant posited that recovery under these articles is limited to special or extraordinary expenses unique to a specific case, such as

---

[1] There is both a similar motion and a similar order on file for felony cases.

2

expert witness fees and travel expenses. In the defendant's view, the district attorney and the sheriff wanted to be paid "simply for doing their jobs." The defendant also argued that "not one iota of evidence" was presented by the district attorney or the sheriff to justify any expenses incurred in the prosecution or investigation.

The State objected to the motion, noting that the $100 costs imposed under article 887(A) were "not only reasonable, but highly conservative, and supported by the omnibus Motion for Costs of Prosecution filed for the record on October 8, 2004." The State further advised the trial court that such costs had been "uniformly assessed against convicted defendants" in the 3rd JDC since October 2004. The sheriff's office filed a similar objection, noting that the $100 cost is "specifically authorized" by article 895.1, and that the law does not require the sheriff to prove "dollar-for-dollar expenditures or to submit an itemization of costs in every criminal case." The sheriff argued that the law permits the judicial district to set standard costs in the interest of judicial efficiency.

In a written ruling, the trial court denied the defendant's motion to reconsider sentence, determining that the costs imposed "appear to be fair, reasonable, and not excessive," and that "both the costs of prosecution and the costs to the sheriff are allowed." The trial court pointed out that the assessment was made according to a schedule that was signed by all divisions of the 3rd JDC, and that the defendant was informed of the costs at sentencing and given several months to pay the costs.

The court of appeal reversed, holding that the expenses incurred by the district attorney in the prosecution of the case, and the sheriff in the investigation of the case, were not properly assessed to the defendant. Specifically, the court of appeal held that article 887(A) and article 895.1(B) "do not allow recovery for the ordinary operating expenses of the district attorney's office or the sheriff's

3

department. Rather, the district attorney and the sheriff can only receive reimbursement for the costs they actually 'incurred' in connection with a particular case." *State v. Griffin*, 48-580, p.11 (La. App. 2 Cir. 5/14/14), 139 So. 3d 14, 21.

The State (through the district attorney) and the Union Parish Sheriff filed separate writ applications, which we granted and consolidated to determine whether the court of appeal erred in reversing the trial court's determination that costs of prosecution and costs of investigation were legally imposed on this defendant pursuant to La. C.Cr.P. art. 887(A) and La. C.Cr.P. art. 895.1(B). We now hold that the court of appeal erred in striking down the costs in this case, given the lack of support in the language of the statute for its finding that only special, itemized, or extraordinary costs are recoverable. Accordingly, we reverse the judgment of the Second Circuit Court of Appeal and reinstate the judgment of the trial court.

## LAW AND DISCUSSION

This case before us presents an issue of statutory interpretation: Do La. C.Cr.P. art. 887(A) and La. C.Cr.P. art. 895.1(B) permit the imposition of costs of prosecution and costs of investigation in criminal cases, even when those costs are not considered to be "special" or "extraordinary" to the case at hand?

Legislation is the solemn expression of legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *Cat's Meow, Inc. v. City of New Orleans,* 98-0601, p. 15 (La. 10/20/98), 720 So. 2d 1186, 1198; *La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n,* 2009-0023, p.8 (La. 6/26/09), 17 So. 3d 350, 355-56. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the

4

legislative intent. *See* La. C.C. art. 9.[2] The starting point for interpretation of any statute is the language of the statute itself. *See, e.g., Cat's Meow,* 98-0601, p. 15, 720 So. 2d at 1198; *Timbermen,* 2009-0023, p. 8, 17 So. 3d at 356.

As an initial matter, we note that the court of appeal inadequately applied these maxims and failed to analyze the provisions at issue in accordance with our civilian tradition. Rather than starting with an analysis of whether the law is "clear and unambiguous" and therefore "shall be applied as written," La. C.C. art. 9, the court of appeal instead dove directly into analyzing the relevant provisions along with other, unrelated provisions.[3] 48-580, pp.5-6, 139 So. 3d at 18-19. We now begin, as we must, with the language of the relevant articles.

La. C.Cr.P. art. 887(A), titled "Defendant's liability for costs" states, in pertinent part:

> A defendant who is convicted of an offense . . . shall be liable for all costs of the prosecution or proceeding, whether or not costs are assessed by the court, and such costs are recoverable by the party or parties who incurred the expense. However, such defendant or person shall not be liable for costs if acquitted or if the prosecution or proceeding is dismissed. . . .

This provision is clear and free of ambiguity. The Legislature clearly states that convicted defendants are "liable for ***all costs*** of the prosecution or proceeding." *Id.* (emphasis added). On its face, it is clear that this article does not limit the imposition of costs of prosecution to special, extraordinary, or itemized costs, as interpreted by the court of appeal.

---

[2] Basic Civil Code concepts regarding interpretation of statutes are applicable to interpreting the Criminal Code. *See State v. Bennett*, 610 So. 2d 120, 122 (La. 1992).

[3] The court of appeal analyzed the articles in relation to (i) La. R.S. 13:62(B), which requires that a "new court cost or fee" be first submitted to the Judicial Council, and (ii) La. R.S. 16:16, which permits a $10 sum be "taxed as costs" against a defendant who is convicted or pleads guilty. Because we find that the articles are clear and unambiguous as written, we decline to consider this interpretation in detail here. We nevertheless find that La. R.S. 13:62(B) and La. R.S. 16:16 are independent of, and not conditioned on, the imposition of costs under articles 887(A) and 895.1(B). Had the legislature intended to repeal either article 887(A) or 895.1(B) after the enactment of La. R.S. 13:62(B) and La. R.S. 16:16, it could have done so. *See Ebinger v. Venus Constr. Corp.*, 2010-2516, p.6 (La. 7/1/11), 65 So. 3d 1249, 1284 ("[T]his Court must assume the legislature was aware of existing laws on the same subject.").

5

Likewise, La. C.Cr.P. art. 895.1(B) titled "Probation; restitution; judgment for restitution; fees" states, in pertinent part:

> When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following: (3) To the sheriff ... for costs incurred.[4]

Article 895.1(B) is also clear and free of ambiguity. Though phrased differently from article 887(A), the legislature states that trial courts may, in their discretion, order "**an amount of money**" to be paid by the defendant as a condition of probation "[t]o the sheriff for **costs incurred**." *Id.* (emphasis added). On its face, it is clear that this does not limit the imposition of such costs to specialized or itemized costs, but instead leaves a court broad discretion to impose "an amount of money" for "costs incurred" as a condition of probation.[5]

We find that it is within the discretion of the trial court to impose a broad category of costs on a convicted criminal defendant pursuant to article 887(A). The official comments to La. C.Cr.P. art. 887 state that the "general rule" is, "upon conviction, either upon a plea or finding of guilty, the defendant becomes liable for all costs of the prosecution . . . . [L]iability for costs is inherent in the adjudication of guilt, whether stated in the sentence or not." La. C.Cr.P. art. 887, official cmt. (a) (1966). In other words, the only limitation on costs in article 887 is "the adjudication of guilt," *i.e.*, a conviction. We also find that it is within the discretion of the trial court to impose a broad category of costs on a convicted criminal defendant sentenced to probation pursuant to article 895.1(B), because

---

[4] The parties have referred to this provision as referencing "costs of investigation," even though it states only "for costs incurred." The actual language of the article is arguably even broader than those costs incurred in "investigation," though we do not address that issue here. For consistency of reference, we will continue to refer to those costs as "costs of investigation."

[5] In a 2002 opinion, the Attorney General wrote that "[t]here is a basis in positive law for the imposition of costs upon litigants to reimburse the sheriff of a parish for his costs and expenses related to a court proceeding." *See* Op. Atty. Gen., No. 02-0004 (4/26/02). Although attorney general opinions are merely advisory and not binding on this Court, we recognize that they do have persuasive authority. *City of New Orleans v. Bd. of Directors of La. State Museum*, 98-1170 (La. 3/2/99), 739 So. 2d 748, 753 n.11.

6

the only limitation in article 895.1(B) is that an amount be imposed "as a condition of probation."

This Court has previously recognized a trial court's discretion to impose a broad category of costs of prosecution under article 887(A). In *State v. Parker*, 436 So. 2d 495 (La. 1983), which the court of appeal did not reference in its opinion, the trial court sentenced the defendant to pay "all costs of this prosecution including but not limited to clerk of court fee, jury costs, record preparation costs, and ***any other costs attributable to this prosecution***." *Id.* at 499 (emphasis added). On appeal, the defendant contended that the cost assessment was erroneous, primarily because it included costs related to an earlier mistrial. Citing La. C.Cr.P. art. 887, this Court held that the defendant should be assessed costs only from the second trial, noting: "A defendant who is convicted of an offense is liable for all costs of the prosecution or proceeding." *Id.* at 499. The Court did not limit this pronouncement to itemized, specific, or extraordinary costs. Indeed, the Court found no limitation in article 887(A) other than a conviction. *Id.* at 499-500 (finding that the imposition of costs was "not only lawful, but also proper"). A fair reading of *Parker* would therefore permit the imposition of a broad array of costs under article 887(A), including those costs imposed by the trial court in this case.[6]

Indeed, this Court could not find ***any*** instance in Louisiana law in which it has been previously declared – as the court of appeal found here – that costs of prosecution or costs of investigation may only be imposed to recoup extraordinary costs that have been specifically proven by a party. The record of the case makes clear that at least eight judicial districts in this state similarly assess some cost of

---

[6] Lower courts of this state have also historically upheld the imposition of costs of prosecution under article 887(A) and costs of investigation under article 895.1(B). *State v. Heath*, 513 So. 2d 493 (La. App. 2d Cir. 1987) (upholding over $3800 in costs of prosecution as within the "sound discretion of the trial court"); *State v. Ratliff*, 35-144 (La. App. 2 Cir. 9/26/01), 796 So. 2d 101 (upholding $2500 in costs of prosecution as "not excessive"); *State v. Brown*, 2004-184, p.3 (La. App. 3 Cir. 9/29/04), 882 So. 2d 1273, 1275 (explaining that payments for costs of investigation are generally upheld unless the payments are made to an agency or program not specifically mentioned in article 895.1(B) or specifically provided for in another statute).

7

prosecution and/or cost of investigation on all convicted defendants. In reaching its decision in this case, the court of appeal relied on *State v. Lopes*, 01-1383 (La. 12/01/01), 805 So. 2d 124, in which this Court found that the cost of a necessary foreign language interpreter was assessable to a defendant as a cost of prosecution. The court of appeal, however, misinterpreted the holding in *Lopes* to limit the ability to recover costs under article 887(A) only to those costs incurred directly as a result of the interpreter – *i.e.*, the special or extraordinary costs of the prosecution at issue in *Lopes*. Nothing in *Lopes* or in the language of article 887(A) is so limiting. Rather, *Lopes* cites article 887(A) and notes that it "continues the well-settled declaration that the defendant's liability for costs of his criminal prosecution and the proceedings related thereto is inherent in the adjudication of his guilt." 01-1383, p.7, 805 So. 2d at 129.

Though we specifically find that a trial court has broad discretion to impose costs in this context, the discretion is not unlimited. The Louisiana Constitution limits a court's power to impose fines and costs when those costs are excessive or unreasonable. *See State v. Dorthey*, 623 So. 2d 1276 (1993) ("Louisiana's judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness.") (citing La. Const. art. 1, sec. 20). To constitute an excessive sentence, a court must find that "the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and therefore, is nothing more than the needless imposition of pain and suffering."[7] *State v. Guzman*, 99-1753, p.15 (La. 5/16/00), 769 So. 2d 1158, 1166. Likewise, both the federal and state constitutions afford the defendant procedural due process

---

[7] In *State v. Ratliff*, 35-144, 796 So. 2d 101, the Second Circuit ordered the defendant to pay $2,500 in costs of prosecution. The court analyzed the penalty under an excessiveness analysis, noting that the costs were not excessive, because they did not "appear grossly out of proportion with the seriousness of the offense," they were not a "purposeless and needless infliction of pain and suffering," and they did not "shock the sense of justice." *Id.* (citing La. Const. art. 1, sec. 20; *State v. Dorthey*, 623 So. 2d 127 (La. 1993)).

rights of notice and the opportunity to be heard before a sentence is imposed. La. Const. art. 1, sec. 2; U.S. Const. amend. XIV. *See Fuller v. Oregon*, 417 U.S. 40 (1974) (holding that, provided there are sufficient due process safeguards in place, statutory schemes that require a convicted defendant to reimburse state actors for work undertaken due to his or her own wrongdoing do not offend the constitution); *Wilson v. City of New Orleans*, 479 So. 2d 891, 894 (La. 1985) ("The central meaning of procedural due process is well settled: Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified."). These limitations on a trial court's discretion protect defendants from excessive or unreasonable penalties.[8]

In the instant case, the trial court did not abuse its discretion in determining that the costs imposed on the defendant are fair, reasonable, and not excessive. The omnibus motion, filed in the public record in the 3rd JDC and publicly available for review and inspection since its filing in October 2004, adequately supports the $100 costs of prosecution imposed and makes clear that such costs are reasonable and not excessive.[9] The omnibus motion represents that $100 is only the ***minimum*** amount of costs incurred by the office in prosecuting the crime, which cannot be considered "grossly disproportionate to the severity of the crime." *Guzman*, 99-1753, p.15, 769 So. 2d at 1166. The 3rd JDC judges' *en banc* order similarly supports the $100 costs of investigation as reasonable and not excessive. Accordingly, neither $100 cost "shock[s] our sense of justice." *Id*. Further, this defendant had notice of the potential costs imposed pursuant to article 887(A) and

---

[8] Due process also consists, of course, of substantive rights. Substantive due process rights have not been contested in this matter, so we decline to address them here.

[9] The defendant's ability to pay does not appear to be an issue in this case. Though the analysis may be different if these costs were imposed upon indigent defendants, that question is not before us here. *Fuller*, 417 U.S. 40, at 46 (upholding statute as constitutional where obligation to repay the state "accrues only to those who later acquire the means to do so without hardship").

Likewise, we recognize that some defendants, while not indigent, may not be able to pay the entirety of the costs assessed at one time. We therefore urge lower courts to be cognizant of this issue, and exercise discretion in determining payment requirements and schedules.

article 895.1(B) years before he committed the instant crime, and, before accepting his plea, he was fully advised of his legal and constitutional rights, which he waived.[10]

In analyzing any provision of our code, the words are applied as written so long as their application does not lead to absurd consequences. La. C.C. art. 9. Here, they do not. In fact, the defendant articulates no absurd consequences in at all.[11] Rather, the defendant's primary argument is that the district attorney and the sheriff offered "no proof" in the trial court that either agency expended a "single dime" in prosecuting and investigating the case. That assertion is not accurate, because there is proof that the costs imposed on the defendant are justified. In the omnibus motion, the district attorney attests that the *minimum* cost for prosecuting each and every case is $100, and lists the tasks that lead to those costs. Likewise, the signed *en banc* court order indicates that, after conferring with the sheriff, the judges of the 3rd JDC determined that $100 for costs of investigation is "in line with cost[s] incurred in any misdemeanor case sentenced." Those documents themselves demonstrate that the district attorney and sheriff incurred $100 in costs, and that those costs are reasonable. The defendant's "lack of proof" argument implies that the district attorney and sheriff are required to provide itemized proof in all cases of each and every cost to justify costs of prosecution and costs of

---

[10] In reaching its decision here, the court of appeal relied on the Third Circuit's decision in *State v. Rideau*, 05-1470 (La. App. 3 Cir. 11/02/06), 943 So. 2d 559, *writ denied*, 06-2805 (La. 9/14/07), 963 So. 2d 395. As a decision of a lower court of this state, *Rideau* is not binding on this Court, and the facts are entirely distinguishable, because the defendant in *Rideau* was ordered to pay in excess of $120,000 and given no notice of the costs at sentencing (unlike the defendant in this case). Further, unlike in this case – where the requested costs were reasonable and publicly available – the costs in *Rideau* were ultimately rejected by the court of appeal for being extraordinarily high and imposed on the defendant without notice. *Id.*, p.14, 943 So. 2d at 568.

[11] The defendant has argued that this interpretation will permit the district attorney and sheriff to receive payment for "just doing [their] job." But the defendant points to no statute or decision of this Court that prohibits the state from requiring that a convicted defendant defray or even completely bear the costs of those actions. Provided there are sufficient frameworks in place to provide notice and protection against the imposition of unreasonably excessive sentences, statutory schemes requiring reimbursement of the state for work undertaken due to a criminal defendant's own wrongdoing is constitutional. *Fuller v. Oregon*, 417 U.S. 90 (1974).

investigation. Not only is the defendant's position unsupported by the language of the articles themselves, but this interpretation would itself lead to absurd results. Requiring itemization of costs for each and every misdemeanor conviction would needlessly increase the administrative workload of the already busy criminal justice system and delay the expeditious adjudication of cases, thereby contravening the plain purpose of our criminal laws. *See* La. C.Cr.P. art. 2 ("The provisions of this Code are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay."). In this case, the costs imposed are reasonable and publicly documented by the omnibus motion and *en banc* order; specific dollar-for-dollar proof on an individualized basis is not required.

We also disagree with the defendant's argument that receiving proceeds from any costs imposed would require the district attorney's recusal, because the district attorney's office would therefore have a "personal interest" in the case. We note upfront that the defendant never filed a motion for recusal in this case, nor did he even attempt to demonstrate that the district attorney "has a personal interest in the cause which is in conflict with the fair and impartial administration of justice." *State v. King*, 06-2383 (La. 4/27/07), 956 So. 2d 562 (citing La. C.Cr.P. art. 680(1)). This alone renders his argument moot in this Court, yet due to the gravity of this accusation, we feel compelled to address it. Prosecutors "need not be entirely neutral and detached." *State v. Ortiz*, 2011-2799, p.6 (La. 1/29/13), 110 So. 3d 1029, 1033 (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248-49 (1980)). Rather, they are "necessarily permitted to be zealous in their enforcement of the law." *Id.* Of course, this zealousness is not without limits, because prosecutors are public officials who must "serve the public interest." *Id.* With respect to the prosecutor's public duty, this Court previously explained that a

11

prosecutor "represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes." *State v. Tate*, 171 So. 108, 112-113 (1936). In other words, a district attorney acts in his duties as a zealous advocate of the state to seek "equal and impartial justice" – not to seek a conviction or a fee. We therefore reject any argument by the defendant that the district attorney is "interested" in a conviction.

Moreover, this Court has never held – and declines to hold here – that a standardized fee collection, set forth in a public schedule and imposed on convicted criminals, is tantamount to, or in any way equates to, a "personal interest" in a matter. Rather, the Court has limited recusal of district attorneys to cases where the "personal interest" is strictly individual. *See State v. King*, 2006-2383 (La. 4/27/07), 956 So. 2d 562 ("A district attorney should not harbor any ***personal feelings*** toward an accused that might, consciously or unconsciously, impair his ability to conduct the accused's trial fairly and impartially.") (emphasis added). *See also Tate*, 171 So. at 112-113 (ordering recusal of district attorney who was employed as an attorney in several civil suits against the defendant); *State v. Marcotte*, 86 So. 2d 186 (1946) (declaring improper trial court's refusal to hear evidence on motion to recuse a district attorney for having a "***personal animosity***" against defendant due to "quarrels and altercations" between defendant and the father of the district attorney and the fact that they were political opponents) (emphasis added); *State v. Cox*, 167 So. 2d 352, 357 (La. 1964) (defendant charged with defamation of judge and district attorney, and district attorney would "naturally feel that conviction of the accused would be a public vindication of the wrong done him").[12]

---

[12] The defendant has, at various points in this litigation, argued that this outcome could lead to the district attorney or sheriff seeking reimbursement from every defendant in every case for

Finally, we also granted this writ application to address the court of appeal's holding that "ordinary expenses" of prosecution are payable not to the district attorney, but instead to the parish police jury. *Griffin*, 48-480, p.10, 139 So. 3d at 21. La. C.Cr.P. art. 887(A) states that "costs are recoverable by the party or parties who incurred the expense." This language raises two questions: Is the district attorney a "party"? And did the district attorney "incur the expense" of the prosecution?

The district attorney is plainly a "party" to criminal proceedings. A "party" is "anyone who both is directly interested in lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment." Black's Law Dictionary (10th ed. 2014). Louisiana law, in turn, provides that a district attorney has "entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. C.Cr.P. art. 61. *See also* La. Const. Art. 5, sec. 26(B) ("[A] district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury."). Because a "party" is "interested in" and has the "right to control" the proceedings, and because Louisiana law expressly gives a district attorney "entire charge and control of every criminal prosecution," it is clear the district attorney is a "party" here.[13]

Moreover, the district attorney incurred expenses in prosecuting the case. As the set forth in the omnibus motion, in connection with misdemeanor cases, the district attorney's office performs a variety of tasks, which include screening a case

---

every penny spent to prosecute him. But this "slippery slope" argument is not the case before this Court – rather, the case at issue involves the $100 *minimum* costs imposed.

[13] The court of appeal held that, pursuant to La. R.S. 15:571.11, all costs collected are payable to the parish police jury as the "party" who incurred the expense. 48-580, p.9-10, 139 So. 3d at 20-21. But the court of appeal did not perform a plain language analysis before comparing article 887(A) with a separate, independent provision of Louisiana law.

to determine appropriate charges, preparing and filing the bill of information, meeting with victims and witnesses of crimes, issuing subpoenas for records (including phone and medical records) and gathering and reviewing additional discovery, tracking the defendant's pretrial motions, and attending court and conferences. Whether or not these tasks are "ordinary" tasks of the district attorney (as the court of appeal held), the district attorney still "incurs" the costs and can, under the plain language of article 887(A), recover those costs. *Cat's Meow,* 98-0601, p. 15, 720 So. 2d at 1198.[14]

## CONCLUSION

La. C.Cr.P. art. 887(A) and La. C.Cr.P. art. 895.1(B) are clear and unambiguous on their face, and the articles provide support for the imposition of a broad category of costs of prosecution and costs of investigation within the sound discretion of the trial judge. The permissible costs imposed under these articles are not limited to costs that are special or extraordinary to the case at the bar. The Code of Criminal Procedure does not require that the costs imposed under article 887(A) or article 895.1(B) be expressly tied, dollar-for-dollar, to those incurred by the state in its prosecution or investigation of the case. Nor do the articles require that the costs imposed be accompanied by specific evidentiary proof unique to each and every case. Rather, so long as the defendant has sufficient notice of the imposition of such costs, and as long as the costs are reasonable and not excessive, costs of prosecution and costs of investigation may be imposed upon convicted defendants, as set forth in the articles.

---

[14] From a practical perspective, the district attorney's offices in certain judicial districts consider costs imposed pursuant to article 887(A) vital to the functioning of the office. In Louisiana, each district attorney receives an annual salary of $50,000 from the state. Each district attorney, in turn, has a statutorily provided number of assistant district attorneys, the state funding each at $45,000 per year. La. R.S. 16:10; La. R.S. 16:11(A). These amounts are only a minimum (La. R.S. 16:14(A)), and any funds excess of these must come from a source other than the state legislature. *See*, *e.g.*, La. R.S. 16:6 (funds generated by parish police juries); La. R.S. 16:15, La. R.S. 16:15.1, La. R.S. 16:16 (funds generated by district attorneys' offices). Funds generated by the district attorney over and above those provided by the state as salary or by the police juries pursuant to their authority under La. R.S. 16:6 have permitted district attorneys around the state to effectively operate their offices.

As to the costs imposed in this case on this defendant, all defendants in the 3rd JDC have been on notice since 2004 that a misdemeanor conviction could result in the imposition of a $100 cost of prosecution, and since 2006, that a misdemeanor conviction could result in a $100 cost of investigation. The defendant here was assessed with those standard amounts in accordance with a public fee schedule, the costs were reasonable and not excessive and the defendant had sufficient notice of the costs.

## DECREE

For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court is reinstated.

**REVERSED.**