WEIMER, J.,
dissenting.
hi respectfully dissent.
At issue in this matter is the integrity of the criminal justice system and the justified concern that, when a judge is selected to preside over a case, the justice system is fair to both the state and the accused. It is undisputed that the district attorney’s office knows what judge will hear a case if that office picks a certain date. Counsel for the district attorney’s office admitted at oral argument that the system of allotting judges at Criminal District Court for the Parish of Orleans can be manipulated by the district attorney’s office. Counsel further submitted that if the ability to manipulate the system is the determining factor under the law, then the district attorney’s office should not prevail. That is, indeed, the law and, thus, the district attorney’s office should not prevail.
The district attorney’s argument is essentially that any allotment system can be manipulated; therefore, there is no need to take corrective action for the system here. |aHowever, barriers to manipulation by either the. state or the accused must exist, else fairness is replaced by mere faith that the system will not be manipulated.
After the majority recounts a line of cases sufficient to demonstrate & jurisprudence constante rule that defendants facing criminal charges are guaranteed by due process to a random allotment system of judges, the majority nevertheless retreats from the equally established rule that defendants need not show actual manipulation of the allotment system. The rule, instead, as this court explained in State v. Reed, 95-0648, p. 1 (La.4/28/95), 653 So.2d 1176, 1176, is that if the system *975 can be shown to “invitef ] manipulation of allotments” by the district attorney’s office, then defendants are “entitled to enforcement of the court [random allotment] rule without proving actual manipulation in [their] particular case[s].”.
The majority traces back the recognition that due process requires random allotment to at least this court’s ruling in State v. Simpson, 551 So.2d 1303 (La.1989) (on reh’g). “To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with power to choose the judge to whom a particular case is assigned.” Simpson, 551 So.2d at 1304 (footnote omitted). The majority does not, however, trace these due process eases forward. In addition to recently citing both Simpson and Reed favorably in State v. Cooper, 10-2344, p. 10 (La.11/16/10), 50 So.3d 115, 124, this court has also cited Simpson and Reed in In re Elloie, 05-1499, p. 23 n. 21 (La.1/19/06), 921 So.2d 882, 898 n. 21, in which this court disciplined a judge for misconduct which included inter alia “vio-lat[ing] the rules regarding the random allotment of cases.” Without even reviewing the lower courts’ reliance on both Simpson and Reed, the lineage from this | ¡¡court as just recounted has stood unbroken for approximately 27 years and easily qualifies as “a long line of cases following the same reasoning within this state” and “forms jurisprudence constante.” See Doerr v. Mobil Oil Corp,, 00-0947, p. 13 (La.12/19/00), 774 So.2d 119, 128.
Apparently attempting to avoid the recognition that the majority is actually overruling this line of jurisprudence, the majority undertakes various efforts to attempt to distinguish the instant case. The majority’s efforts are inconsistent, at best. For instance, the reader is told at the outset that the issue to ,be resolved is: “This writ concerns the allotment system of criminal cases in Orleans Parish Criminal District Court when the date of the offense is uncertain.” State v. Nunez c/w State v. Licciardi c/w State v. Brown, 15-1473, 15-1486, Op. at 965 (emphasis added). Later the reader is told that,there is no uncertainty; in contrast, “the defendant’s conduct, drives the date of offense listed on the indictment.” Nunez, Op. at 970 (emphasis added).
More troubling, is the contradiction in recognizing,that the, district attorney’s office has vast discretion in formulating the date indicated on charges, while steadfastly insisting that “the prosecutor is constrained by the defendant’s conduct in selecting the date of the earliest charged offense,” Nunez, Op. at 972. The majority attempts, to reconcile this contradiction by citing a putative “policy,” by which it is allegedly “the State’s policy of selecting the first day.of the month when an exact date is uncertain.” Nunez, Op. at 973-74. This “policy” is not mandated by any statute or court rule. Therefore, not only is this “policy” merely discretionary and subject to change at any time, but assuming its existence only underscores that the ability to manipulate the system is afforded to the prosecutor.
14While the majority recognizes the possibility of a “determined and unethical prosecutor” (Nunez, -Op. at 972), the majority is quick to dismiss the notion that defendants are entitled to a reallotment to judges other than.those which have resulted from the dates on charges inscribed by the district attorney’s office. However, according to the majority’s account, an “unethical prosecutor” need not be very “determined” to manipulate the allotment system. As the majority confirms, the *976 policy of the district attorney’s office of using the beginning of the month- in charges for which a crime occurs over a span of time is merely an “internal” guideline. Nunez, Op. at 973-74.
Although the district attorney’s “internal policy” is discretionary, the majority’s reliance on it does not aid the'notion that the instant cases have been randomly allotted. Rather, and at most, the situation appears to be that a defendant’s alleged crime pro-vidés a general timeframe, but the district attorney’s office chooses the specific date(s) indicated on the charges. The record irrefutably establishes that from the district attorney’s office’s choice of date(s), the selection of a particular judge follows. That is not random allotment, especially in light of the fact of record that the assignment of a judge for a specific date is known to the district attorney’s office.[1]
Also, because the “policy” is entirely discretionary, there is no indication that there are any checks and balances on prosecutors’ implementation of the “policy.” The lack of checks and balances in the putative “policy” underscores the wisdom of this court’s prior ruling that if the system'invites manipulation of allotments by the district attorney’s office, then defendants are entitled to enforcement of a random allotment rule without proving that the district attorney’s office has actually I ^manipulated the system. See Reed, 95-0648 at 1, 653 So.2d at 1176. I believe it is a fair reading of Reed-to say that Reed champions a standard whereby respect for the judicial system is directly proportional •to its fairness to all. I believe it is also fair to say that Reed also indicates that any procedure, whereby the district attorney is allowed to figuratively place his thumb on the scales of justice as it concerns the allotment of cases, fails to satisfy that standard. While I do not attribute any manipulation to this district attorney’s office in this case, the law, as articulated by this court, is that it is only the possibility of manipulation which is sufficient to result in an allotment being overturned.
The majority’s further use of the discretionary “policy” is significant, in that it reveals that the majority is tacitly overruling Reed and the other cases from this court’s jurisprudence constante on random allotment. Specifically, while the rule under the Simpson and Reed line of cases has been that- no actual manipulation need be shown, the majority now uses the discretionary “policy” to launch into an analysis of whether defendants have shown actual prejudice. In support of this inquiry, the majority relies on Cooper, supra. In Cooper, this court stated that a defendant “is not denied due process as a result of an error in a particular judge’s selection unless he can point to some resulting prejudice.” Id.; 10-2344 at 20-21, 50 So.3d at 131. However, this statement was made in the context of defendant’s argument, which the court described in these terms: “He argues there is- no rational basis for failing to randomly allot this case as he requested, i.e. by a totally random system” and “there is no suggestion of the district attorney’s complicity in the process leading to the assignment of this case to the trial judge and no basis for the inference that the state was in any way involved in that process.” Id., 10-2344 at 20-21, 50 So.3d at 131.
|fiThe absence of any suggestion that the district attorney’s office could manipulate the system is critically important for un *977 derstanding the statement in Cooper regarding the need to show prejudice. The court observed that the defendant “failed to show in what way the manner in which his case was allotted resulted in a tribunal less than fair and impartial.” Id., 10-2344 at 21, 50 So.3d at 131. That is, the defendant failed to adduce affirmative proof of prejudice. However, the court, did not confine its inquiry there. The court also asked whether the defendant made any “suggestion of the district attorneys complicity in the process leading to the assignment of this case.” Id. This latter inquiry was essential, because as this court ruled in Reed, when the district attorney can manipulate the system, there is no need to show actual prejudice. Stated simply, when the district attorney can manipulate the system, prejudice is assumed. See Reed, 95-0648 at 1, 653 So.2d at 1176. The court’s inquiry in Cooper shows that it still considered .the rule in Reed to be valid. Indeed, before the whole inquiry just described, the court in Cooper explained: “Synthesizing the -rules of Simpson and Reed, we hold that a rotation or allotment system is not acceptable if the event which triggers application of the system is dependent upon an action taken by the district attorney.” Cooper, 10-2344 at 10, 50 So.3d at 124.
I believe that it is- imprudent to depart from this court’s prior jurisprudence con-stante by now requiring defendants to show actual manipulation of a random allotment system, when these defendants have shown that the system is eminently susceptible to manipulation. This court should not depart so easily from reasoning that protects due process, which is constitutionally guaranteed. See La. Const, art. 1, § 2 (“No person shall be deprived of life, liberty, or property, except by due process of law.”); and La. Const, art. I, § 1 (“The rights enumerated in this Article are | -(inalienable by the state and shall be preserved inviolate by the state.”). Recalling that the majority’s departure now foists proof of actual manipulation on defendants, the majority compounds its erroneous reasoning (and the attending due process infirmities) by deciding this case without a remand to allow defendants to marshal evidence under the standards the majority has-.now announced. ,In legal terms,, the majority’s ruling has changed the substantive due process guarantees that have been long-recognized, and has done so in a way that deprives the defendants of procedural due process. See State v. Griffin, 14-1214, 14-1238, p. 5 and n. 8 (La.10/14/15), 180 So.3d 1262, 1269 and n. 8 (noting that procedural due process requires notice and an opportunity’ to be heard, and “[d]ue process also consists, of course, of substantive rights.”).- In non-legal and admittedly colloquial terms, because the rules of the game have been changed after the game, the game should be replayed to ensure defendants will be afforded an opportunity to fully participate under the new rules.[2] Nevertheless, if indeed prejudice need be shown, then it is suggested that there is proof of prejudice to the perceived integrity and fairness of the system when a prosecutor is capable of manipulating the allotment.
To conclude, where the integrity of the criminal justice system has been placed at issue as it has in these consolidated cases and the district attorney’s office is allowed to remain in a position where it admittedly can manipulate the allotment of judges, confidence in the integrity of the system will be eroded. While there is only one *978 step, and a very preliminary step, of the criminal justice system at issue in these cases, sadly, the majority has -missed an opportunity to demonstrate that there is no ^aspect of the system that should not be safeguarded from manipulation and unfairness. Thus, I respectfully dissent.
HUGHES, J., dissents and assigns . reasons.
| ,This case is not about right or wrong, guilt or innocence, the' burden of proof, evidence, the heinous nature of the crime, the district attorney’s discretion to charge whatever crime whenever he deems appropriate, “other crimes” where a certain date is known, or fraud or bribery committed by participants in the system.
This case is about the integrity of the judicial system and the image of this court as the guardian of that integrity.
The state admits the Orleans Parish allotment system can be manipulated. Its practice of going to the first of the month when a range of dates is involved in order to be inclusive is questioned by the case where the victim first indicated the incident occurred in March or maybe the middle of 2012. The state went with July 1st. Why would March-June be excluded as a possible period when crime occurred?
District Attorney is the toughest job in the system. The fact that in Orleans Parish the state has the ability to manipulate which judge a case is allotted to is not Dan advantage the state needs or should wish to be perceived as having. It is inimical to the respect the district attorney should be accorded.
The integrity of the system and the faith of the people in that system are more important than the particulars of any one case. This case will be noted by every attorney, teacher, law enforcement officer, and a great deal of the public. Doubt in the fairness of the system and the ability of a party to legally manipulate the system cannot be tolerated. I would affirm the court of appeal.

. By way of illustration only, and not suggesting a requirement, one possible way this unfortunate situation could be remedied is by having any case for which criminal activity occurred over a range of dates to be assigned to a separate track for random allotment within that track.

. The record also reflects that local rules of court enacted en banc were simply not followed in the allotment process.