Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,402-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

JAKENO ANDREWS                              Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-CR-2717

Honorable Bernard Scott Leehy, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Edward K. Bauman

ROBERT STEPHEN TEW                   Counsel for Appellee
District Attorney

HOLLY CHAMBERS JONES
KALEE MORGAN MOORE
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.,**

This criminal appeal arises from the Fourth Judicial District, Parish of Ouachita, State of Louisiana, the Honorable B. Scott Leehy, Judge, presiding. The defendant, Jakeno Andrews ("Andrews"), pled guilty to manslaughter in connection with the death of the victim, Damien Lee. The trial court sentenced Andrews to 35 years' imprisonment at hard labor with credit for all time served. Andrews appeals his sentence as constitutionally excessive. For the reasons expressed herein, we affirm.

### FACTS AND PROCEDURAL HISTORY

On May 14, 2019, officers with the Monroe Police Department responded to a battery complaint coming from someone at 2812 Calypso Street in Monroe, Louisiana. When the officers arrived at the scene, they made contact with Andrews and entered the residence. Almost immediately upon entry, the officers smelled a strong odor of bleach and observed that everything had been cleaned. They found the victim, Damian Lee, bleeding from his head and lying unconscious on the bedroom floor. Andrews indicated to the officers that Lee had arrived at the home and told Andrews that he had been attacked. The officers were unable to locate Lee's pulse and contacted medical personnel. When emergency responders arrived, they determined that Lee was deceased.

The officers escorted Andrews outside the residence and placed him in the back of a patrol unit. Andrews, who was unrestrained, escaped from the patrol unit and fled the scene. Although the officers chased Andrews, they were unable to apprehend him. Detective Kris Fulmer, an investigator with the Monroe Police Department, arrived on the scene and obtained a search warrant for Andrews' residence. While conducting a search of the residence,

officers observed that the floors looked like they had just been cleaned and were still wet in some areas. The kitchen chairs had been stacked on the table, and there was a mop bucket beside the bathroom door with a cleaning solution in it. A bleach bottle and a bottle of Fabuloso were beside the mop bucket. Similarly, a Lysol bottle was on the living room table. The bathtub was also wet, indicating that it had been used recently. Small drops of blood spatter were found on the living room walls, the table, T.V. stand, wall heater, and ceiling. Although there was a significant amount of blood spatter in the living room, there was very little blood on the floor.

The bedroom in which Lee was found also had only a small amount of blood in it. The only blood observed by the officers was on or under the victim's body. Officers indicated in their reports that Lee's body had numerous cuts ranging from his lower legs to his head. Some cuts were fresh while others appeared to be old, and the fresher wounds appeared to be small holes which Det. Fulmer suspected might have been inflicted from a tool like an ice pick. Following the search of the residence, Lee's body was released to the Ouachita Parish Coroner's Office.

The following day, on May 15, 2019, Andrews turned himself in at the Monroe Police Department. Officers escorted Andrews to an interview room without restraints, and he voluntarily offered an explanation to the officers. Andrews was read his *Miranda* rights, and he indicated his understanding by signing and initialing a form. He agreed to speak with Det. Schmitz and Det. Fulmer. In his interview with the detectives, Andrews explained that, on the date of the incident, Lee had punched him several times in the face, and Andrews had responded by pushing Lee, which caused Lee to fall and hit his head. The back of Lee's head started bleeding, but the

2

blood simply ran down his back instead of squirting or spraying. According to Andrews, Lee assisted him in mopping and cleaning up the blood from the floor. Andrews also stated that he had mopped the floor prior to the altercation. Lee then went into the bedroom to lie down, but Andrews realized that Lee was making funny noises, which prompted Andrews to call the police. Andrews informed the detectives that he was scared when police arrived, so he told the officers on the scene that Lee had been beaten up. Because Andrews was afraid, he escaped from the patrol unit and ran.

Det. Fulmer's report indicated that, although Andrews complained that Lee had punched him in the face hard a number of times, Andrews' face on the day of the interview had no marks or bruises. When detectives questioned Andrews about that, he changed his story and said that Lee did not punch him very hard. Andrews also denied any knowledge of cuts on Lee's body. Following Andrews' exchange with the detectives, he was arrested and booked for second degree murder.

Dr. Frank Peretti, the forensic pathologist who conducted Lee's autopsy, and determined that Lee died from multiple blunt force chest injuries with multiple sharp force injuries. Dr. Peretti also found that Lee had several broken bones in his chest, and the numerous cutting wounds on Lee's body were in different stages, some fresh, healing, infected, and healed. It appeared to Dr. Peretti that Lee's body had been abused over a long period of time.

On August 16, 2019, a Ouachita Parish grand jury indicted Andrews on the charge of second degree murder, a violation of La. R.S. 14:30.1. Initially, Andrews waived formal arraignment and pled not guilty, but he later filed a "Motion to Modify Plea to Not Guilty by Reason of Insanity" on

3

February 4, 2020, which the trial court granted. On February 9, 2021, Andrews filed a "Motion to Appoint a Sanity Commission," which was granted by the trial court. The trial court appointed Drs. Charles P. Vosburg and D. Clay Kelly, Jr. to the commission on November 29, 2021. At a hearing held on March 10, 2022, the trial court communicated the findings of the sanity commission, which were that both doctors found that Andrews was able to relate to his attorney with a reasonable degree of rational understanding, and Andrews has a rational understanding of the proceedings against him. The trial court also noted that both doctors found that Andrews met the *Bennett* criteria for competency to stand trial. The court ultimately concluded that Andrews was competent to stand trial.

On June 27, 2024, Andrews entered into a plea agreement with the State wherein he pled guilty to manslaughter; the trial court accepted his guilty plea. The trial court noted that it found Andrews made a knowing, intelligent, and voluntary waiver of his constitutional rights, and he had full understanding of the nature of the charge against him and the consequences of his guilty plea. The court then ordered a pre-sentence investigation ("PSI"). Andrews' sentencing hearing took place on September 19, 2024. The trial court began by reciting the facts of the case and noting Andrews' criminal history. Andrews had one felony conviction, several arrests for various misdemeanor matters, and one conviction for extortion. The trial court also noted a letter filed by Andrews and acknowledged that the defendant has led a difficult life.

In its reasoning, the trial court included that it had weighed the sentencing guidelines from La. C. Cr. P. art. 894.1 and listed several aggravating and mitigating factors. The trial court first noted that Andrews'

4

conduct during the commission of the offense manifested deliberate cruelty to Lee, especially considering the numerous stab wounds and the extent of the victim's injuries, including collapsed lungs and broken ribs. The trial court also highlighted that Andrews knew or should have known that the victim was particularly vulnerable due to a disability. Although Andrews wrote a lengthy letter, the trial court indicated that Andrews failed to express any remorse. This lack of remorse was also evident, according to the trial court, when Andrews attempted to clean up the residence to hide any culpability he may have had in the victim's death rather than contacting help immediately. The trial court also considered Andrews' flight from the scene. The trial court addressed the mitigating factors it considered, including that Andrews has led a difficult life.

The trial court ultimately determined that there was an undue risk that, under a suspended sentence or probation, Andrews would commit another crime. It also concluded that Andrews needed correctional treatment that can be provided most effectively by commitment to an institution and that a lesser sentence would deprecate the seriousness of Andrews' crime. The court then imposed a sentence of 35 years at hard labor with credit for time served and advised Andrews that he has two years from the date that the sentence and conviction become final within which to apply for post-conviction relief. Andrews filed a "Motion for Reconsideration of Sentence" on October 15, 2024, which was denied by the trial court on October 22, 2024. Andrews has appealed.

**DISCUSSION**

In his sole assignment of error, Andrews urges that his 35-year hard labor sentence for manslaughter is unconstitutionally excessive under the facts of this case. Andrews acknowledges that his sentencing exposure was substantially reduced by his plea agreement from a mandated sentence of life imprisonment (second degree murder) to not more than 40 years (manslaughter). However, he argues that his sentence of 35 years at hard labor is a near-maximum sentence, which should only be reserved for the worst of offenders and the worst of offenses. Andrews also suggests that the trial court and the State may have erroneously believed that he was responsible for "over 100 cutting wounds" on the victim's body. Andrews insinuates that the victim may have engaged in self-injury. Moreover, Andrews also argues that his mental health issues should have carried more weight in his sentencing.

In response, the State maintains that the trial court carefully and thoroughly considered the sentencing factors outlined in La. C. Cr. P. art. 894.1, the PSI, and statements on Andrews' behalf. The trial court noted Andrews' criminal history as a second felony offender and considered his numerous misdemeanor arrests and/or convictions. The State also points out that the trial court noted that Andrews knew or should have known that the victim was particularly vulnerable or incapable of resistance due to a disability. The trial court, according to the State, believed that the victim's disabilities played a significant part in the victim's inability to resist the brutal and fatal attacks by the defendant. Although Andrews submitted a lengthy letter to the trial court before sentencing, the letter failed to contain remorse for killing the victim. More particularly, the trial court was

concerned that Andrews did not seek medical attention for the victim. Instead, the State suggests that the evidence showed Andrews was focused on cleaning the crime scene to hide his culpability. Andrews also fled the scene instead of waiting to be questioned by officers. In light of these circumstances, the State urges that the trial court did not abuse its broad discretion in sentencing Andrews to 35 years at hard labor.

An appellate court uses a two-pronged approach in reviewing a sentence for excessiveness. First, the record must show that the trial court used the criteria set forth in La. C. Cr. P. art. 894.1. *State v. Harper*, 54,173 (La. App. 2 Cir. 1/12/22), 332 So. 3d 799; *State v. White*, 53,444 (La. App. 2 Cir. 4/22/20), 293 So. 3d 1274; *State v. Scroggins*, 52,323 (La. App. 2 Cir. 9/25/19), 280 So. 3d 841. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Harper*, *supra*; *State v. Couch*, 53,956 (La. App. 2 Cir. 6/30/21), 321 So. 3d 541; *State v. White*, *supra*. The important elements that should be considered are the defendant's personal history, prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Harper*, *supra*; *State v. Couch*, *supra*; *State v. White*, *supra*.

Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Harper*, *supra*; *State v. Couch*, *supra*; *State v. Minnieweather*, 52,124 (La. App. 2 Cir.

6/27/18), 251 So. 3d 583; *State v. Robinson*, 49,825 (La. App. 2 Cir. 5/20/15), 166 So. 3d 403.

Second, the court must determine whether the sentence is excessive by constitutional standards. *State v. Scroggins*, *supra*. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. O'Neal*, 55,559 (La. App. 2 Cir. 2/28/24), 381 So. 3d 273, *writ denied*, 24-0424 (La. 10/15/24), 394 So. 3d 817; *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1156, *writ denied*, 23-01429 (La. 4/16/24), 383 So. 3d 149. For a sentence to be considered excessive by constitutional standards, a reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. *State v. Griffin*, 14-1214 (La. 10/14/15), 180 So. 3d 1262; *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153, *writ denied*, 18-2052 (La. 4/15/19), 267 So. 3d 1131.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116; *State v. Griffin*, *supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. O'Neal*, *supra*; *State v. McKeever*, *supra*.

8

La. R.S. 14:31(B) provides that whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years.

In this case, we find no abuse of the trial court's discretion. The trial court's 35-year sentence is not excessive in light of the facts of the case and the significant reduction in potential exposure to confinement Andrews obtained through his plea agreement with the State. The record shows that the trial court considered the facts of the case as well as Andrews' criminal history. The trial court noted Andrews' one felony conviction and several arrests for various misdemeanor matters. The trial court honored Andrews' request to refrain from detailing his extortion conviction, and the trial court did so by stating that the information was in the PSI report.

In addition to considering the PSI report, the trial court took into account the defendant's social history, noting that Andrews' letter indicated that he had led a difficult life, and it considered this information as a mitigating factor. As aggravating circumstances, the trial court stated that Andrews' conduct during the commission of the offense manifested deliberate cruelty to the victim, especially considering that the victim had been incapacitated to the extent that he could not defend himself and was subjected to extreme violence. The trial court considered that any chance of survival the victim may have had was lost during the time Andrews spent cleaning the scene to hide evidence of his culpability. The court also noted Andrews' flight from the scene as an aggravating factor. After considering the totality of the circumstances, the trial court noted that a jury in this case would have been faced with strong evidence of second degree murder, but Andrews received leniency in his plea agreement with the State.

In its conclusion, the trial court expressed that there is an undue risk that under a suspended sentence or probation Andrews would commit another crime, that he needs correctional treatment that can be provided most effectively by commitment to an institution, and that a lesser sentence would deprecate the seriousness of his crime. It is without question that the trial court adequately complied with and considered the sentencing guidelines, and it did not abuse its discretion in sentencing Andrews to 35 years at hard labor with credit for time served.

Finally, the 35-year sentence imposed is not constitutionally excessive. Andrews used extreme violence and showed deliberate cruelty to the victim while committing the offense, with Lee suffering from numerous stab wounds, collapsed lungs, and several broken ribs. Given Andrews' potential exposure to a mandatory life sentence and in light of his conduct, the 35-year sentence at hard labor is not grossly disproportionate to the severity of the offense, nor does it shock the sense of justice.

## CONCLUSION

For the reasons set forth above, the conviction and sentence of the defendant, Jakeno Andrews, are affirmed.

**AFFIRMED**.