BROWN, Chief Judge.
[, Defendant, Keddrick Kennon, was charged by bill of information with three counts of distribution of a controlled dangerous substance, Schedule II (cocaine), in violation of La. R.S. 40:967(A)(1), and one count of distribution of a counterfeit substance which was represented to be a controlled dangerous substance (methamphetamine), in violation of La. R.S. 40:971.1. The jury verdicts were as follows: Count One — distribution of cocaine on January 21, 2014, not guilty; Count Two — distribution of cocaine on January. 24, 2014, guilty; Count Three-rdistribution of cocaine on February 6, 2014, guilty of possession; and, Count Four — distribution of a counterfeit drug on February 6, 2014, not guilty.
On June 5, 2015, Kennon was sentenced to serve 30 years at hard labor on Count Two distribution and five years at hard labor on Count Three possession, to run consecutively. Kennon’s motion to reconsider the sentences was denied. Kennon has appealed. The 30 year sentence on the distribution count is amended to show that the first two years are to be served without the benefit of parole and as amended, we affirm the convictions and sentences.

Discussion

Sufficiency of the Evidence

Kennon argues that the state’s case hinged on the testimony of a desperate and biased Confidential Informant (“C.I.”), which was insufficient to. carry the state’s burden of proof on Counts Two and Three. s vehicle and person were searched before and after his meeting with Kennon to purchase illegal narcotics; Kennon argues that the videos of the ^controlled buys on January 21, 2014, and February 6, 2014, do not capture these searches, and that the C.I. could have brought the cocaine with him to the controlled buys. Kennon further points to the lack of DNA or fingerprint evidence.
While working as a trustee for the Min-den Police Department and in anticipation of his upcoming release from prison, Donald Fields advised Captain Dan Weaver that he could purchase illegal narcotics from Keddrick Kennon. Fields volunteered to help the police because he needed money to support himself once out of prison. Captain Weaver informed Fields that, as a confidential informant, he would receive $1,500 each time he purchased illegal narcotics from Kennon.
Captain Weaver testified that he and Captain Garrett met up with the C.I. on January 24, 2014, and February 6, 2014; at a prearranged location. They ‘ searched the C.I.’s vehicle and his person thoroughly, looking for any illegal narcotics, and placed an undercover video camera in the C.I.’s shirt. They advised the C.I. to go directly to meet Kennon to purchase the drugs and come directly back. The C.I. was told to call Captain Weaver and Captain Garrett to let them know when he completed the purchase, and was on his way back to the prearranged location.
State’s Exhibit No. 2 is a video of the controlled buy on January 24, 2014, which was shown to the jury as evidence of Count Two. In the video; Captain Weaver gives the C.I. $350 to purchase cocaine from Kennon. The C.I. drives to Kennon’s' *664 mother house. The C.I. and Kennon stand beside the bed of a truck in front of the house. ■ Kennon is seen placing what ^appears to be a small plastic bag in the bed of the truck, and saying “I cooked that! Put a'stamp on that.” The C.I. is then seen handing Kennon some money and holding two small bags containing a white substance. After leaving the house, the C.I. makes a phone call stating, “I am on my way,” and drives back to the prearranged location. After arriving back at the prearranged location, the C.I. is seen handing Captain Weaver the items he purchased from Kennon.
State’s Exhibit No. 3 is a video of the controlled buy on February 6, 2014, which was shown to the jury as evidence of Counts Three and Four. In the video, Captain Weaver gives the C.I. $350 to purchase illegal narcotics from Kennon again. The C.I. picks up Kennon who directs the C.I. to his house; While sitting at a table in the house, Kennon is seen shuffling a small plastic bag and handing it to the C.I. The C.I. then picks up a white substance from inside the bag and places it in the view of the camera. The C.I. is seen counting money while Kennon is wrapping up a small plastic bag. Before the C.I. and Kennon leave the house together, the C.I. is seen holding a small plastic bag of a hard white substance and a small plastic bag of another substance described as meth. After dropping Kennon off, the C.I. makes a phone call and states, “I am on my way.” The C.I. drives back to the prearranged location to meet Captain Weaver and Captain Garrett, and hands Captain Weaver the items he purchased from Kennon,
■ After each controlled buy, Captain Weaver went back to his office, sealed up the items the C.I. purchased from Kennon, and placed them in a locked container in his office. Later, Captain Weaver gave the items to ^Lieutenant Ron Payton of the Minden Police Department, who delivered the items to the North Louisiana Crime Lab. Randall Robillard of the North Louisiana Crime Lab determined that the small bags Kennon gave the C.I. on January 24, 2014, contained cocaine, and one of the small bags Kennon gave to the C.I. on February 6, 2014, contained cocaine. The other small bag which had been described as containing methamphetamine that Kennon gave the C.I. on February 6, 2014, was- determined not to contain a controlled dangerous substance.
The C.I.’s testimony at-trial was consistent with what was seen in State’s Exhibit No. 2. and State’s Exhibit No. 3. The C.I. testified that he did not bring any controlled dangerous substances with him when he met up with Kennon, and he was searched prior to and after executing the controlled buys.
The Due Process Clause of the U.S. Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. A reviewing court must consider whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt and should not restrict its inquiry to whether there is any evidence to support the conviction. This standard for reviewing the sufficiency of the evidence does- not permit the reviewing court to make its own subjective determination of guilt or innocence nor does it require scrutiny of the reasoning process used by the fact finder. Instead the relevant question is whether; after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the ^essential elements of the crime beyond a reasonable doubt. It is the responsibility of the jury, not the reviewing court, to decide what conclusions should be drawn from evidence admitted at trial, and *665 a reviewing court may set aside the jury’s verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the .jury. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Clark, 50,137 (La. App.2d 09/30/15), 181 So.3d 150; La. C. Cr. P. Art. 821.
In viewing the evidence in the light most favorable to the prosecution, particularly the videos of the controlled buys and the uncontradicted testimony. of the state’s witnesses, .we find that the evidence was sufficient to convince any rational trier of fact of Kennon’s guilt on Counts Two and Three. State v. Tate, supra

Right to counsel of choice

Kennon claims that he was.denied his right to counsel of his choice when the trial court denied his motion for a continuance on the morning of trial. One of Ken-non’s attorneys, J. Florence, was in the middle of a murder-trial-in Caddo Parish on the morning that Kennon’s trial was set to begin. Kennon’s other retained counsel of record, Ernest Gilliam, represented Kennon at trial. Kennon Claims that Mr. Gilliam was only supposed to handle his case through the plea negotiations and Mr. Florence was to take over if the case went to trial.
|fiThe Sixth Amendment to the U.S. Constitution, as well as La. Const, art.-I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). As a general proposition, an accused person has the right to counsel of his choice. State v. Leggett, 363 So.2d 434 (La.1978); State v. Mackie, 352 So.2d 1297 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). However, that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. State v. Jones, 376 So.2d 125 (La.1979); State v. Leggett, supra; State v. Mackie, supra. See State v. Reeves, 06-2419 (La.05/05/09), 11 So.3d 1031.
The right to counsel of choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage'within the procedural framework of the criminal justice’ system. State v. Seiss, 428 So.2d 444 (La.1983). Absent a justifiable basis, “[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications.” State v. Leggett, supra at 436.
Within a week of the state charging Kennon, Mr. Gilliam enrolled as counsel of record. Kennon was represented by Mr. Gilliam during all of Kennon’s court appearances, including his bond reduction hearing and status conferences. The record does not indicate that Mr. Florence was ever present.
17This is not the first time that Mr. Gilliam moved to continue Kennon’s trial due to a scheduling conflict, Kennon’s trial was originally set for October 27, 2014. On October 16, 2014, Mr. Gilliam filed a motion to continue the trial because he had two trials scheduled on the morning of October 27, 2014, in Caddo Parish; there was no mention of Mr. Florence in the motion. The trial court, granted the motion and rescheduled the trial date for April 27, 2015. At a status conference two weeks before Kennon’s new trial date, Mr. Gilliam assured the trial court that either he and/or Mr. Florence would be present for trial on April 27, 2015. However, on the morning of April' 27, 2015, Mr. Gilliam, *666 on behalf of Kennon, moved for a continuance based on the absence of Mr. - Florence.
The trial court was well within its discretion in deciding to proceed with Ken-non’s trial. A continuance of the trial would have led to an undue delay in this case.- Kennon waited until the morning of his second trial date to request a continuance because Mr. Florence was involved with another trial in Caddo Parish. It was Mr. Gilliam who effectively represented Kennon at every proceeding in this matter. Mr. Gilliam’s representation led to Kennon receiving not guilty verdicts on Counts One and Four, and a responsive verdict on Count Three.
Accordingly, the trial court did not abuse its discretion in denying Kennon’s motion for a continuance, nor was Kennon prejudiced by the denial.

[sJury verdict and instructions

Kennon asserts that the Sixth Amendment of the U.S. Constitution guarantees defendants a right to jury trial and requires unanimous verdicts, citing Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). Further, Kennon argues that the jury charge — “Ten of your number must concur in order to render any verdict in this case” — is misleading.
The verdict of guilty on Count Two was unanimous. The verdict of guilty of a lesser, responsive charge on Count Three was 11 to 1.
La. C. Cr. P. art. 782 provides in part that:
A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), decided in May 1972, the U.S. Supreme Court held that Louisiana’s law that provided in criminal cases in which punishment is necessarily at hard labor a vote of nine of the twelve jurors is sufficient to return a guilty verdict did not deprive a defendant of either due process or equal protection of the law.
In Apodaca v. Oregon, supra, also decided in May 1972, the U.S. Supreme Court considered three separate non-unanimous felony convictions arising out of Oregon. Defendants claimed that their convictions, though allowed by the Oregon Constitution, were in violation of the Due Process Clause of the Sixth Amendment, as incorporated by the Fourteenth Amendment. The justices split 4-1-4, in favor of upholding the convictions; |flhowever, five justices agreed that in state criminal cases jury unanimity was not mandated by the Sixth Amendment.[1]
Accordingly, the Louisiana Supreme Court and this Court has repeatedly af *667 firmed the constitutionality of La. C. Cr. P. art. 782(A). State v. Bertrand, 08-2215 (La.03/17/09), 6 So.3d 738; State v. Blueford, 48,823 (La.App.2d Cir.03/05/14), 137 So.3d 54, writ denied, 14-0745 (La.11/21/14), 160 So.3d 968, cert. denied, — U.S. -, 135 S.Ct. 1900, 191 L.Ed.2d 770 (2015).
Under La. C. Cr. P. art. 802, the trial judge is required to charge the jury as to the law applicable to the case. Ken-non objected to the following phrase used by the trial court in the jury instructions: “Ten of your number must concur in order to render any verdict in this case.” Ken-non believed that the jury instruction was misleading because he claimed it did not sufficiently inform the jury that if ten jurors failed to reach an agreement, no verdict would be rendered.
The trial court’s jury instruction on the number of jurors required to reach a verdict is a correct statement of the law set forth in La. C. Cr. P. art. | in782(A). Thus, the trial court’s jury instructions were not erroneous, and Kennon has provided no evidence that he was prejudiced by them.

Excessive and consecutive sentences

Kennon claims that his crimes are victimless and nonviolent, and as such, the imposition of maximum and consecutive sentences was excessive. Kennon also argues that the trial court failed to provide adequate reasons for the imposition of consecutive sentences.
The penalty for a distribution of cocaine conviction is imprisonment at hard labor for not less than two years, nor more than 30 years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence. Additionally, there is an optional fine of not more. than. $50,000. La. R.S. 40:967(B)(4)(b). The penalty for a possession of cocaine conviction is imprisonment with or without hard labor for not more than five years. Additionally, there is.an optional fine of not more than $5,000. La. R.S. 40:967(C)(2). The. trial judge sentenced Kennon to serve 30 years at hard labor on Count Two and five years at hard labor on Count Three, the maximum allowable sentences under the statute. The sentences were ordered to run consecutively.
Pursuant to La. C. Cr. P. art. 894.1, the trial court considered the circumstances of Kennon’s offenses and reviewed letters written by Keddrick Kennon and his mother, Beverly Kennon. The trial court considered the following mitigating circumstances: 1) Kennon is still a relatively young person; 2) Kennon’s mother always worked two or three jobs, and Kennon was left to raise his two siblings at a very, young age; 3) |n Kennon is a Minden High School graduate with above average intelligence; 4) Kennon has a wife and six children and pays child support for some of his children, and 5) Kennon has a substance abuse issue with a “prescribed” narcotic.
The trial court also considered that Ken-non was a fourth-felony offender and that his parole was revoked on three of the prior convictions all involving the distribution or possession of cocaine.
The trial court took issue with the lack of appreciation Kennon showed for the seriousness of his crimes. Kennon argued that his crimes were victimless and nonviolent in nature, and that he was not a “murderer.”
. The trial court concluded that numerous resources had been expended to give Ken-non second chances, and Kennon had repeatedly continued his criminal activity.
Kennon is a fourth-felony offender with a history of drug distribution. Further, the jury’s not guilty findings ahd guilty of *668 a lesser charge of possession rather than distribution provided Kennon with a significant reduction of his sentencing exposure. The trial court did not abuse its discretion in sentencing Kennon to the maximum allowable sentences on Counts Two and Three.
Kennon argues that the trial court failed to give adequate reasons for ordering his sentences to run consecutively. While the trial court failed to state for the record why it chose to impose consecutive sentences, the failure to articulate specific . reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support 112consecutive sentences. See State v. Boudreaux, 41,660 (La.App.2d Cir.12/13/06), 945 So.2d 898, writ denied, 07-0058 (La.11/02/07), 966 So.2d 591, appeal after new sentencing hearing, 44,502 (La.App.2d Cir.09/23/09), 21 So.3d 1022. Clearly, the trial court provided aggravating circumstances that supported consecutive sentences. The trial court articulated that Kennon’s inability to discontinue drug dealing is a danger to the community. State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990); State v. Denstell, 476 So.2d 931 (La.App. 2d Cir.1985). This is evident by Kennon’s past criminal record, including his failures on parole.
In considering Kennon’s criminal history of drug distribution, Kennon’s fourth-felony offender status, the seriousness of the offenses, and Kennon’s likelihood of rehabilitation, the sentences do' not shock the sense of justice, nor are they dispropor-. tionate to the severity of the offense. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980).

Error Patent

The trial court failed to order that | iathe first two years of Kennon’s sentence on Count Two be served without the benefit of parole, probation, or suspension of sentence. La. R.S. 40:967(B)(4)(b) requires that the first two years of a distribution of cocaine conviction be served without the benefit of parole, probation, or suspension of sentence. Pursuant to La. C. Cr. P. art. 882(A), this Court has the authority to correct an illegal sentence. Accordingly, Kennon’s sentence on Count Two is amended to include that the first two years are to be served without the benefit of parole, probation, or suspension of sentence.

Conclusion

For the above reasons, Keddrick Ken-non’s convictions are affirmed, and, his sentences, as amended, are affirmed.

. Justice Powell in his concurring opinion stated that unanimous jury verdicts are required in federal criminal cases for historic reason but due process alone does not require unanimous jury verdicts in state cases. See Johnson v. Louisiana, 406 U.S. 356, 371, 92 S.Ct. 1620, 1638.
In 2002, Derrick Todd Lee was convicted in Louisiana of second degree murder by a jury vote of 11 to 1 and his conviction was upheld all the way through Louisiana courts. State v. Lee, 05-0456 (La.05/16/07), 964 So.2d 967, abrogated on other grounds by State v. Lee, 05-2098 (La.01/16/08), 976 So.2d 109, writ denied, 07-1288 (La.03/07/08), 977 So.2d 896. On petition for a writ of certiorari to the U.S. Supreme Court, Lee argued that it was time to reconsider Apodaca and the issue of unanimity. Lee’s petition for certiorari was denied. Lee v. Louisiana, 555 U.S. 823, 129 S.Ct. 130, 172 L.Ed.2d 37 (2008).