McCALLUM, J.
McKinley Efferson (the "defendant") was charged with second degree murder, but was convicted of manslaughter and sentenced to 36 years' imprisonment at hard labor. He now appeals his sentence and conviction and urges two assignments of error: (1) the trial court erred in excluding evidence of the victim's "dangerous character" pursuant to La. C.E. Art. 404 ; and (2) his sentence is unconstitutionally excessive. For the reasons stated herein, we affirm.
FACTS
Reginald Wess ("Mr. Wess"), the victim, was engaged to marry the defendant's mother, Mattie Efferson ("Ms. Efferson"). Mr. Wess and the defendant were not related. At the time of the murder, Mr. Wess had lived in the same house with Ms. Efferson, the defendant, and all or some of Ms. Efferson's other children for approximately 4½ years. At the time of the murder, the members of the household were Ms. Efferson, Mr. Wess, the defendant, and Maurice Efferson, who is the defendant's brother. Mr. Wess and Ms. Efferson shared a bedroom while the defendant and Maurice Efferson each had his own separate bedroom.
Mr. Wess's employment required him to be at work at approximately 4:00 a.m. He normally went to bed before 10:00 p.m. and woke around 2:30 a.m. to prepare for work and feed the dogs.
The defendant admitted to police in a recorded interview that he used his mother's 9 mm handgun to shoot Mr. Wess multiple times. This occurred in their home in Shreveport, Louisiana, between 2:00 and 3:00 a.m. on January 16, 2015. Awakened by the gunshots, Ms. Efferson came out of her bedroom.[1] Upon doing so, she saw Mr. Wess dressed in his work uniform lying on the floor near the doorway between the kitchen and the carport. She also saw the defendant, holding her gun, standing on the opposite side of the room from where Mr. Wess was lying. She asked the defendant what he had done, and the defendant replied that Mr. Wess was "messing with him."
Emergency services received two 911 calls regarding the shooting; one was by an unidentified male caller and the other by Ms. Efferson. Mr. Wess was transported to the emergency room where he was pronounced dead.
With Ms. Efferson's consent, the police searched the house. They found Ms. Efferson's 9 mm handgun under the defendant's mattress. They also found four spent 9 mm shell casings in his clothing hamper. The *1156 crime scene investigators had the house cordoned off and took measurements and pictures of the house, including the blood in the kitchen area.
Dr. Long Jin conducted the autopsy and, at trial, was admitted as an expert in forensic pathology. He stated that Mr. Wess was 50 years old, was 5'6" tall, and weighed 236 pounds. Mr. Wess's blood and urine tested negative for drugs and alcohol.
Dr. Jin recovered three projectiles (bullets) from Mr. Wess's body. He indicated that there were five wounds on Mr. Wess's body, and stated that one of the wounds could have been caused by a bullet's reentry into the body after passing through the arm. He also stated that two of the woundswould have been independently fatal, and that a third could have been independently fatal.
The three projectiles recovered from the Mr. Wess's body and the four spent shell casings recovered from the defendant's clothing basket were matched to Ms. Efferson's handgun.
After the jury was sworn, the trial court held a hearing (outside the presence of the jury) regarding the admissibility of evidence of Mr. Wess's "dangerous character" pursuant to the so-called "domestic violence exception" set forth in La. C.E. art. 404(A)(2).[2] The trial court ruled that the exception was not applicable because the defendant and Mr. Wess did not have a "familial" relationship with each other. Finding the exception inapplicable, the trial court held evidence of Mr. Wess's supposed dangerous character inadmissible pursuant to the general rule of article 404(A). The defendant did not make a proffer or otherwise make known to the court the substance of the evidence which he sought to introduce pursuant to article 404(A)(2).
The state introduced and played for the jury the recording of the defendant's interview with the police. This interview was conducted approximately 2 ½ hours after the shooting. The defendant, who was 23 years old at the time of the trial, gave his story of what transpired between him and Mr. Wess in the minutes and hours prior to the shooting. Additionally, he detailed the nature of their relationship. The defendant also described instances of prior domestic violence involving the defendant and Mr. Wess. In addition to the defendant's statement, Ms. Efferson, Marisa Efferson (the defendant's sister), Officer Glass-Bradley, and Detective Joshua Mayfield testified regarding previous domestic violence between the defendant and Mr. Wess.
The jury found the defendant guilty of manslaughter, which is a responsive verdict to the charge of second degree murder.[3] The trial court sentenced the defendant to 36 years of imprisonment at hard labor.
DISCUSSION
Admissibility of evidence of victim's "dangerous character"
In relevant part, La. R.S. 14:30.1 defines second degree murder as "the killing of a human being...when the offender has a specific intent to kill or to inflict great bodily harm." It also provides that second degree murder "shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La. R.S. 14:20(A)(1) provides a complete defense to murder "when committed in self-defense by one who reasonably believes that he is in imminent danger *1157 of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." When the defendant in a murder prosecution asserts self-defense, the prosecution bears the burden of proving beyond a reasonable doubt that the killing was not committed in self-defense. State v. Johnson , 41,428 (La. App. 2d Cir. 9/27/06), 940 So.2d 711, 716, writ denied , 2006-2615 (La. 5/18/07), 957 So.2d 150.
Manslaughter is defined in relevant part in La. RS 14:31 as:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.
Thus, for murder to be reduced to manslaughter, the following elements must be proved: (1) the homicide was committed "in sudden passion or heat of blood"; (2) that sudden passion or heat of blood was immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection; (3) the defendant's blood did not cool between the provocation and the killing; and (4) an average person's blood would not have cooled between the provocation and the killing. In a prosecution for murder, a defendant who claims provocation (as a means of reducing murder to manslaughter) bears the burden of proving these elements by a preponderance of the evidence. State v. Leger , 2005-0011 (La. 7/10/06), 936 So.2d 108, 170-2.
Article 404(A)(2), in relevant part, states:
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible in a civil or criminal proceeding for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
...
(2) Character of victim ... [E]vidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence . (Emphasis added).
If the victim does not make a "hostile demonstration" or commit an "overt act" at the time of the offense, a criminal defendant may introduce evidence of the victim's "dangerous character" only if the defendant produces evidence sufficient to support a finding that: (1) there was a history of assaultive behavior between the victim and defendant; and (2) a familial or intimate relationship existed between the *1158 victim and the defendant. This is the so-called "domestic violence exception."
The trial court ruled that the domestic violence exception was inapplicable because there was no "familial" relationship between the defendant and Mr. Wess. In this appeal, the defendant argues that the relationship between the defendant and Mr. Wess was "familial." He characterizes his relationship with the Mr. Wess as a "stepfather-stepson type" relationship.
In relevant part, La. C.E. art. 103 provides:
A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
...
(2) Ruling excluding evidence. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
Thus, if the trial court rules evidence inadmissible, the proponent must make known to the court the substance of the excluded evidence in order to preserve the issue for appellate review. State v. Magee, 2011-0574 (La. 9/28/12), 103 So.3d 285, 326. Otherwise, the proponent's right to argue the matter on appeal is waived. The issue can be preserved for appeal by proffer (or "offer of proof") either in the form of a complete record of the excluded evidence or a statement of what the proponent believes the excluded evidence would have established. Id. The purpose of a proffer "is to create a record of the excluded evidence so that the reviewing court will know what the evidence was and will thus be able to determine if the exclusion was improper, and if so, whether the improper exclusion constituted reversible error." Id. at 327.
If the proponent of erroneously excluded evidence does make a proffer, an appellate court will not reverse unless that error affected a substantial right of the proponent. "The determination is whether the error, when compared to the entire record, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove." Johnson v. Tucker , 51,723 (La. App. 2 Cir. 11/15/17), 243 So.3d 1237, 1243, writ denied , 2017-2075 (La. 2/9/18), 236 So.3d 1262, and writ denied , 2017-2073 (La. 2/9/18), 236 So.3d 1266. In Johnson , we further explained:
The concept of substantial right, as used in Louisiana Code of Evidence article 103, is akin to the harmless error doctrine applicable in both civil and criminal matters. Error has been defined as harmless when it is trivial, formal, merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case. Prejudicial error affects the final result of the case and works adversely to a substantial right of the party assigning it. Error is prejudicial when it consists of the exclusion of evidence related to a material point in issue and adversely affects the substantial rights of the party opposed to the exclusion. (Internal citations and quotation marks omitted).
Johnson , supra at 1243.
In this case, the defendant failed to make a proffer of the evidence that he sought to introduce pursuant to the "domestic violence exception" contained in article 404(A)(2). Accordingly, the defendant has waived his right to challenge the trial court's ruling regarding the domestic violence exception on appeal.
Furthermore, the record reveals that the jury was, despite the trial court's ruling, presented with evidence of specific prior instances of conduct and domestic violence between the defendant and Mr. Wess. Specifically, that evidence consisted of the defendant's recorded interview with *1159 police, the trial testimony of the defendant's mother and sister, and the trial testimony of Detective Joshua Mayfield and Officer Glass-Bradley. Therefore, even if the trial court's ruling purporting to exclude article 404(A)(2) evidence was erroneous, it could not have prejudiced the defendant - except to the extent, if any, that he would have introduced evidence of prior instances of conduct or domestic violence, which were not presented to the jury. The defendant did not make a proffer and he does not allege any such instances in his brief. Accordingly, the defendant has failed to carry his burden of proving that the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case.
Excessiveness of sentence
The defendant faced a sentencing range of zero to 40 years' imprisonment at hard labor for his conviction of manslaughter. La. R.S. 14:31(B). Had the defendant been convicted of second degree murder, he would have been subject to a mandatory life sentence without benefits. La. R.S. 14:30.1(B).
When a defendant's motion to reconsider sentence raises only a claim that the sentence imposed was constitutionally excessive, he is relegated to review of his sentence on that ground alone. La. C. Cr. P. art. 881.1 ; State v.Turner , 50,221 (La. App. 2 Cir. 1/20/16), 186 So.3d 720, writ denied , 2016-0283 (La. 2/10/17), 215 So.3d 700.
A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Shaikh , 2016-0750 (La. 10/18/17), 236 So.3d 1206 ; State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980).
To constitute an excessive sentence, a reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. State v. Griffin , 2014-1214 (La. 10/14/15), 180 So.3d 1262. The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams , supra ; State v. Fontenot , 51,072 (La. App. 2 Cir. 1/11/17), 211 So.3d 1236.
In sentencing the defendant, the trial court stated that it felt the evidence supported a conviction of second degree murder. The defendant acknowledges that the sentencing judge may properly consider the benefit that the defendant received via conviction of a responsive verdict. Nonetheless, the defendant argues that, because the trial court did so in this case, "this sentence was a blatant usurpation of the jury's province as a fact-finder."
In State v. George , 33, 859 (La. App. 2 Cir. 9/27/00), 768 So.2d 748, 760, writ denied , 2000-2806 (La. 9/14/01), 796 So.2d 674, this court held that it is appropriate for the trial court, in sentencing a person convicted of manslaughter, to consider that the evidence might have supported a verdict of second degree murder. In State v. White , we elaborated on that point as follows:
In considering the nature of the offense, both the trial court and the reviewing court may assess whether the crime for *1160 which defendant has been convicted adequately describes his conduct when the conviction is for a lesser included responsive offense to the crime charged. The fact that the evidence might have supported a verdict of second degree murder is an appropriate sentencing consideration in a case such as this one in which the defendant has been convicted of the lesser offense of manslaughter.
State v. White , 48,788 (La. App. 2 Cir. 2/26/14), 136 So.3d 280, 282, writ denied , 2014-0603 (La. 10/24/14), 151 So.3d 599. Both George and White involved defendants who were convicted upon jury trial, not guilty pleas. George , supra at 768 ; White , supra at 280.
George and White hold that it is proper for a trial court, in sentencing a defendant on a responsive verdict, to impose a higher sentence than it otherwise would if evidence supported conviction for the charged offense. Our approach has not changed. This argument by the defendant is meritless.
The remainder of the defendant's argument consists entirely of the following legal conclusions: "the sentence imposed was unconstitutionally harsh and excessive given the facts and circumstances of this case" and "this sentence will not further the ends of justice. This sentence is nothing more than a needless and purposeless imposition of pain and suffering." In asserting these conclusions, the defendant does not assert any specific facts as support. Likewise, he cites no legal authority for the proposition that a 36-year sentence for the crime of manslaughter, given the facts of this case, is constitutionally excessive.
Like this case, White, supra, involved a defendant charged with second degree murder, but convicted of manslaughter and sentenced to the maximum of 40 years' imprisonment at hard labor. We affirmed. The defendant in White was a 19-year-old first felony offender. He and his two brothers, armed with a golf club and a chair, fought against the victim in physical combat. The victim bested all three brothers. As the victim, who was unarmed and wearing only a pair of shorts, walked away, the defendant produced a handgun and shot the victim to death. The defendant was charged with second degree murder, but the jury returned a responsive verdict of manslaughter. The defendant argued that the trial court improperly imposed the maximum sentence because it believed that the defendant should have been convicted of second degree murder. The defendant also argued that the trial court failed to take into account the defendant's young age, emotional disturbance at the time of the crime, and lack of criminal history. We held that it was proper for the trial court to consider that the evidence was sufficient to support a second degree murder conviction, and that the defendant had "benefited greatly" from the lesser verdict of manslaughter. Id. at 280-282.
State v. Jasper , 28, 187 (La. App. 2 Cir. 6/26/96), 677 So.2d 553, writ denied , 96-1897 (La. 2/21/97), 688 So.2d 521, involved a defendant who was charged with second degree murder, convicted of manslaughter, and sentenced to 35 years' imprisonment at hard labor. We affirmed. The defendant and his cohorts shot at a vehicle with multiple people inside as it drove past the defendant's group. The people in the car were unharmed, but an innocent bystander was killed. The trial court recognized, and this court agreed, that the evidence was sufficient to convict the defendant of second degree murder, which carries a mandatory life sentence without possibility of parole. Accordingly, the defendant benefited from his conviction of the responsive verdict of manslaughter. Id.
Based on the foregoing, we hold that the defendant's 36-year sentence for his conviction *1161 of the responsive verdict of manslaughter is not excessive. After reviewing the record, we agree with the trial court that the evidence could have supported a conviction of second degree murder, not manslaughter, and therefore defendant benefited greatly from the jury's manslaughter verdict.
CONCLUSION
The defendant's conviction and sentence are AFFIRMED.

Ms. Efferson denied hearing any arguing, screaming, doors slamming, furniture moving, or bodies hitting walls prior to the gunshots waking her.

La. Code of Evidence article 404 shall hereinafter be referred to as "article 404."

La. C. Cr. P. art. 814(A)(3).